**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**ANGELA J. SMITH, Personal**
**Representative of the Estate of GILBERT**
**SAMPSON SMITH, JR., and as**
**Grandmother and Next Friend of Kianna**
**Smith, Minor Daughter of GILBERT**
**SAMPSON SMITH, JR.,**

      **Plaintiff,**

      **v.**                         **Civil Action No.  09-0618 (JDB)**

**DISTRICT OF COLUMBIA,**

      **Defendant.**

---

**MEMORANDUM OPINION**

      This case arises from the death of Gilbert Smith, Jr., an inmate who was incarcerated at

the Correctional Treatment Facility located in the District of Columbia.  The Correctional

Treatment Facility is a private prison owned and operated by the Corrections Corporation of

America that houses inmates in the custody of the District's Department of Corporations.  Angela

Smith, personal representative of Mr. Smith's estate, brings this action against the District of

Columbia, alleging that the District "deliberately failed to treat or provide treatment for the

serious and life threatening medical problems being suffered by the deceased."  Compl. ¶ 15.

She asserts claims for the following: (1) violation of the Eighth Amendment pursuant to 42

U.S.C. § 1983; (2) negligent provision of medical care; (3) survival on behalf of both herself and

Gilbert Smith's daughter; and (4) wrongful death.

      Before the Court is [7] defendant District of Columbia's motion to dismiss, or in the

alternative for summary judgment.  Upon careful consideration of the District's motion, the

parties' several memoranda and the entire record herein, and for the reasons stated below, the Court will grant the District's motion.

## BACKGROUND

Gilbert Smith, Jr. was incarcerated at the Correctional Treatment Facility in the District of Columbia for seven months.  Compl. ¶ 12.  The Corrections Corporation of America operates the Correctional Treatment Facility pursuant to a contract with the District of Columbia and, Ms. Smith alleges, provides medical care and treatment there along with Unity Healthcare, Inc. Compl. ¶¶ 1, 8.

Prior to being incarcerated, Gilbert Smith "was partially paralyzed and confined to a wheelchair as a result of gunshot wounds."  Compl. ¶ 11.  While in prison, these injuries, Angela Smith contends, prompted Gilbert Smith to make repeated "requests for medical care treatment, and attention including, but not limited to, providing medication when ordered by his physicians, providing prompt and adequate dressing changes to prevent the formation and growth of decubitus sores, [and] providing sanitary cell conditions."  Compl. ¶ 12.  She alleges, however, that the District failed to "provide a healthcare system that included prompt, proper, adequate, and reasonable medical care and treatment to all persons incarcerated under their care, custody, and supervision."  Compl. ¶ 13.  In so doing, Ms. Smith asserts that it "failed to comply with established standards of care."  Compl. ¶ 13.

Gilbert Smith was released from custody at the Correctional Treatment Facility in May 2007.  Compl. ¶ 11.  He died on January 19, 2008, allegedly as a result of injuries and damages suffered while incarcerated.  Compl. ¶ 30.  Plaintiff Angela Smith brought this action as personal representative of Mr. Smith's estate, and as next friend of Mr. Smith's daughter.  Compl. ¶¶ 1, 7.

## STANDARD OF REVIEW

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. Dist. of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).  A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.  This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1950-51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002).  When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should

be liberally construed in his or her favor.  Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bur. of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Erickson, 551 U.S. at 94 (citing Twombly, 550 U.S. at 555-56).  The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nor does the court accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted); see also Aktieselskabet AF 21. November 21 v. Fame Jeans Inc., 525 F.3d 8, 17 n.4 (D.C. Cir. 2008) (the court has "never accepted legal conclusions cast in the form of factual allegations").

## ANALYSIS

### I.     Section 1983 Claim for Violation of the Eighth Amendment

Municipalities, like the District of Columbia, do not enjoy absolute immunity from section 1983 liability.  See Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690-91 (1978).  They may be held liable "where the municipality itself causes the constitutional violation at issue." City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).  But municipalities are not liable under section 1983 pursuant to a theory of "[r]espondeat superior or vicarious liability." Id.; see also Monell, 436 U.S. at 694-95.  Therefore, "[u]nder Monell, municipalities are liable for their agents' constitutional torts only if the agents acted pursuant to municipal policy or custom." Warren v. Dist. of Columbia, 353 F.3d 36, 38 (D.C. Cir. 2004); see also Monell, 436

U.S. at 694.  The "first inquiry in any case alleging municipal liability under § 1983 is the

question whether there is a direct causal link between a municipal policy or custom and the

alleged constitutional deprivation."  Harris, 489 U.S. at 385.

A municipality's custom or policy may "cause" a constitutional violation under several

different circumstances.  "[F]or instance, the municipality or one of its policymakers [could have]

explicitly adopted the policy that was 'the moving force of the constitutional violation.'"  Warren,

353 F.3d at 39 (quoting Monell, 436 U.S. at 694).  "Or a policymaker could knowingly ignore a

practice that was consistent enough to constitute custom," thereby leading to a violation.  Id.  Or

the "municipality's conduct may evidence a 'deliberate indifference' to the rights of its

inhabitants."  Harris, 489 U.S. at 388; accord Baker v. Dist. of Columbia, 326 F.3d 1302, 1306

(D.C. Cir. 2003)).  Here, Ms. Smith adopts the "deliberate indifference" theory of municipal

liability -- where "'the municipality knew or should have known of the risk of constitutional

violations,' but did not act."  Warren, 353 F.3d at 39 (quoting Baker, 326 F.3d at 1306).

Ms. Smith offers two allegations to support her claim that the District was deliberately

indifferent.  First, she contends that

> there were systemic problems associated with referrals for off-site medical
> treatment of inmates and specialists care that were known to defendant D.C.  The
> defendant failed to take reasonable actions to ensure that systemic problems were
> addressed.

Compl. ¶ 14.  Second, she asserts that

> defendant knew or should have known that there were unreasonable delays
> associated with the deceased's treatment and failed to take the steps necessary to
> correct systemic problems associated with such delays.

Compl. ¶ 20.  In short, Ms. Smith alleges that the District knew or should have known about

supposedly ongoing Eighth Amendment violations regarding Gilbert Smith's medical care.

These allegations, however, cannot survive the District's motion to dismiss.  They do nothing more than recite the requisite causal elements of custom or policy liability based on deliberate indifference -- that is, that the District "knew or should have known" about possible constitutional violations yet failed to act.  Compl. ¶¶ 14, 20.  But "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555); see also id. at 1951 (pleading that defendant "knew of, condoned, and willfully and maliciously agreed to subject [plaintiff] to harsh conditions of confinement as a matter of policy solely on account of his religion, race, and/or national origin and for no legitimate penological interest" fails to state a claim for invidious discrimination); Twombly, 550 U.S. at 551 (alleging a "contract, combination or conspiracy to prevent competitive entry" fails to state a claim for conspiracy).  Ms. Smith's allegations regarding the District's knowledge therefore "are conclusory and not entitled to be assumed true." Id.

Because the "conclusory nature of [Ms. Smith's knowledge ] allegations . . . disentitles them to the presumption of truth," id., the Court must determine whether any factual allegations plausibly suggest that Ms. Smith is entitled to relief.  But Ms. Smith's complaint, and indeed the entire record, is devoid of any facts or allegations that the District of Columbia knew or should have known about Gilbert Smith's supposed mistreatment.  Nowhere does she allege that, for example, Gilbert Smith forwarded complaints or grievances about his treatment to the District of Columbia.  See Moonblatt v. Dist. of Columbia, 572 F. Supp. 2d 15, 21 (D.D.C. 2008) (repeated written complaints regarding treatment forwarded to the District sufficient to place District on

actual or constructive notice).  Although she alleges that "[o]n almost a daily basis, the deceased made requests for medical care, treatment, and attention," Compl. ¶ 12, the Court cannot reasonably infer that these requests were made to or forwarded to the District.  The District neither operated, nor provided medical care at, the Correctional Treatment Facility.  See Compl. ¶ 1 (alleging that the Corrections Corporation of America operated the Correctional Treatment Facility, and in conjunction with Unity Healthcare, Inc., provided medical treatment there); see also Hinton v. Corrections Corp. of Am., 624 F. Supp. 2d 45, 46-47 (D.D.C. 2009); Moonblatt, 572 F. Supp. 2d at 23-24.  Therefore, even if this allegation is true, it does not plausibly suggest that the District knew or should have known about Gilbert Smith's medical treatment, but failed to act.

Nor does Ms. Smith allege that anyone else forwarded grievances to the District on behalf of Gilbert Smith.  To be sure, Maria Smith asserts in an affidavit that while Gilbert Smith was incarcerated she "took it upon [herself] to write to the head of the medical unit at the Correctional Treatment Facility in an effort to obtain better wound care for Gilbert Smith."  Pl.'s Opp'n, Aff. of Maria Smith, at 1.  But even assuming the Court could consider Maria Smith's affidavit on a motion to dismiss,[1] her statement demonstrates only that the head of the medical unit at the Correctional Treatment Facility was on notice of Gilbert Smith's treatment.  As discussed above, the District neither operated, nor provided medical care at, the Correctional Treatment Facility.

---

[1] Maria Smith's affidavit was attached to Angela Smith's opposition to the District's motion to dismiss.  On a motion to dismiss, however, the Court generally may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss."  Hinton, 624 F. Supp. 2d at 46 (citations and quotations omitted).  Maria Smith's affidavit is thus not properly before the Court on the motion to dismiss.

See Compl. ¶ 1.  And there are no allegations that any complaint was subsequently forwarded to the District of Columbia.  In short, there simply are no facts alleged that could plausibly give rise to an inference that the District was on notice of Gilbert Smith's treatment.

Ms. Smith's allegations supporting her claim of custom or policy based on deliberate indifference, then, "amount to nothing more than a 'formulaic recitation of the elements' of " the claim for liability.  Iqbal, 129 S. Ct. at 1951 (quoting Twombly, 550 U.S. at 555).  And therefore they "are 'merely consistent with' defendant's liability, [but] . . . 'stop[] short of the line between possibility and plausibility of entitlement to relief.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).[2]  Accordingly, Count I -- Ms. Smith's section 1983 claim for violation of the Eighth Amendment -- must be dismissed.[3]

## II.     State Law Claims

The District contends that the state law claims asserted in Counts II, III, and IV should be dismissed because Ms. Smith "failed to comply with the statutory notice requirements of D.C.

---

[2] To be sure, the D.C. Circuit previously held that a plaintiff need only plead that a municipality "'knew or should have known' about the ongoing constitutional violations" to sustain a claim for Monell liability predicated on deliberate indifference.  Warren, 353 F.3d at 39 ("It is of no moment that Warren's allegation of actual or constructive knowledge on the part of the District was conclusory.").  But Warren preceded Iqbal, and must now be interpreted in light of that subsequent Supreme Court decision.  Under Iqbal, such conclusory pleadings are no longer sufficient to state a claim on which relief may be granted.  See United States v. Torres, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("But just as we leave to the Supreme Court the prerogative of overruling its decisions, district judges . . . are obligated to follow controlling circuit precedent until either [the circuit court], sitting en banc, or the Supreme Court, overrule it." (citation and quotation omitted)).  This Court concludes that, notwithstanding Warren, the sufficiency of Ms. Smith's allegations here must be assessed under the standard set by the Supreme Court in Twombly and Iqbal.

[3] The Court therefore need not reach the question whether Ms. Smith alleges a sufficient claim of deliberate indifference under the Eighth Amendment.

Code § 12-309." Def.'s Mot. at 13.  Ms. Smith agrees.  <u>See</u> Pl.'s Opp'n at 7.  Under D.C. Code §

12-309, "[a]n action may not be maintained against the District of Columbia for unliquidated

damages to person or property unless, within six months after the injury or damage was

sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the

District of Columbia of the approximate time, place, cause, and circumstances of the injury or

damage."  Gilbert Smith was incarcerated at the Correctional Treatment Facility until

approximately May 17, 2007.  He died on January 19, 2008.  Ms. Smith, however, did not serve

the notice required by section 12-309 until January 5, 2009, considerably more than six months

after both the termination of his incarceration and his passing.  <u>See</u> Compl. ¶ 5.  Therefore, the

state law claims -- Counts II, III, and IV -- must be dismissed as well.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant the District of Columbia's motion to

dismiss.  A separate Order accompanies this Memorandum Opinion.

_____
/s/
JOHN D. BATES
United States District Judge

Dated: <u>December 16, 2009</u>